IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | CR 10-00628-TUC-CKJ (GEE) |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| vs. | ) | |
| JONATHAN MICHAEL THOMAS, | ) | |
| Defendant. | ) | |

The District Court referred this case to the magistrate for hearing on pretrial matters. Hearing on the defendant's Motion to Suppress was held on August 24, 2010. Upon consideration of the evidence presented and the arguments of respective counsel, the magistrate recommends that the District Court, after its de novo review, deny the Motion to Suppress.

**CHARGE:**

The indictment charges that on February 28, 2010, the defendant possessed marijuana with the intent to distribute.

**FACTS:**

On February 28, 2010, the defendant was driving eastbound on Route 86 and approached a Border Patrol checkpoint near Three Points. The pre-primary inspection area was being

1  manned by a K-9 unit and after the dog allegedly alerted to the defendant's truck the
2  defendant was referred to the secondary inspection area where he was asked to exit the
3  vehicle. The dog allegedly alerted to a toolbox in the truck bed and a search revealed
4  approximately 68 kilos of marijuana.

6  **MOTION TO SUPPRESS EVIDENCE:**

7  The defendant argues the evidence should be suppressed because: (1) the stop at the
8  checkpoint was impermissibly prolonged and not limited in its scope; (2) the search of the
9  toolbox in the bed of defendant's truck was not supported by probable cause and the
10  defendant had not consented to the search; and (3) the dog's alert could not provide
11  probable cause to search the toolbox because the reliability of the canine team has not been
12  established.

13  *Testimony of LeBlanc (BPA)*

14  LeBlanc is a Border Patrol agent and trained as a canine handler. He was certified as a
15  dog handler after a six weeks course. His dog is named Beny-A and is certified to detect
16  marijuana, cocaine, heroin, crystal methamphetamine, and concealed humans. He and the
17  dog must undergo a yearly re-certification which they completed just two months ago.
18  LeBlanc testified that his and Beny-A's certification were current as of February 28, 2010,
19  and neither of them have ever failed a certification or re-certification. LeBlanc testified that
20  he and his dog are also required to complete ongoing detection training, i.e., every two weeks
21  he and Beny-A spend a full eight hour day in training sessions which are evaluated by a
22  canine instructor.

23  On February 28, 2010, LeBlanc and his dog were assigned to the eastbound lane of the
24  Border Patrol checkpoint on Highway 86 approaching Three Points. LeBlanc explained that
25  as a driver approaches the checkpoint he will first encounter a canine unit at pre-primary
26  inspection if there's one on duty. LeBlanc and his dog were stationed about 10-15 feet
27  before the primary inspection agent.

28  At about 1p.m. the defendant approached the checkpoint driving a 2004 silver pickup

1  truck which contained a large black toolbox affixed to the bed of the truck. LeBlanc testified
2  that as the truck approached his location his dog, Beny-A, began to demonstrate "alert"
3  behaviors, i.e., "his ears perked up, his breathing pattern started to change, his body posture
4  started to change, becoming very animated about his searching, trying to pinpoint...the source
5  of the odor. So his tail goes up and he's along–just on the bottom of the toolbox towards the
6  gas tank, and as he's air-scenting he starts to move towards the toolbox." Therefore, the
7  defendant was referred to secondary inspection. LeBlanc explained Beny-A is trained to
8  alert to certain odors in the air and then to pinpoint the source of the odor:  LeBlanc further
9  explained that normally, if a vehicle comes by and there's no odor present, Beny-A stands
10 passively by his (LeBlanc's) side and just air-scents, i.e.,  sniffs the air as the vehicle  goes
11 by.

12   LeBlanc testified that less than 10 seconds elapsed between the time the defendant
13 approached the checkpoint and was directed to secondary inspection; he could not recall if
14 the agent at primary merely motioned the defendant to go to secondary or if he actually said
15 something to him.

16   After the truck was in secondary the occupants were asked to exit the vehicle so that
17 LeBlanc could safely deploy his dog. Benny-A was brought around the exterior of the truck
18 in a "systematic search; beginning at the tailgate, LeBlanc walked the dog counterclockwise
19 around the truck while presenting certain areas with his hand in a "BW pattern", i.e., LeBlanc
20 held his hand high then low, alternately, presenting or indicating spots for the dog to
21 sniff–around the exterior of the truck. As soon as LeBlanc presented the toolbox, Beny-A
22 "immediately went into what we call a–an indication or a sit....a passive indication." Beny-A
23 was then placed the dog in his kennel in the back of LeBlanc's vehicle which was about 15
24 feet from the secondary inspection location.

25   LeBlanc testified he then asked the defendant if he could look inside the toolbox and the
26 defendant handed him the keys. Upon opening the toolbox, LeBlanc saw what appeared to
27 be "several large bricks of marijuana." He stated the defendant was in secondary inspection
28 for less that two minutes before he (LeBlanc) asked to look into the toolbox. LeBlanc

1  testified his gun was not drawn nor did he raise his voice while asking to search the toolbox.
2  He estimated that less than four minutes elapsed between the time the defendant reached the
3  pre-primary location and when the marijuana was found in the toolbox.

4  On cross-examination LeBlanc admitted that in the Border Patrol K9 system there is a
5  distinction between an "alert" and an "indication" by a dog.

6  *Testimony of Dubois (BPA)*

7  Paul Dubois is a Border Patrol agent and has been the K9 Coordinator for the Tucson
8  Sector since December, 1999. In his position he is familiar with the paperwork associated
9  with the K9 teams in this Sector. Exhibit 2 (attached hereto) was presented to him and he
10 identified it as the current certification letter indicating that LeBlanc and Beny-A participated
11 in and successfully completed the Border Patrol Detection Certification on June 8th and 9th,
12 2009. Exhibit 2 also includes the score sheet for that certification, as well as all the
13 performance standard sheets or score sheets (for LeBlanc and Beny-A) completed by
14 instructors on maintenance training days since June, 2009. The sheets are signed by the
15 instructor administering the training on any given day and Dubois is responsible for custody
16 and control of those records.

17 Defense counsel objected to the admission of Exhibit 2 because parts of the score sheets
18 had been redacted. Dubois testified that Border Patrol has deemed that the redacted parts
19 contain sensitive information regarding its investigative techniques and training
20 methodologies. After the parties argued their respective positions regarding the admission of
21 Exhibit 2, the court took the matter under advisement, ordered each counsel to file a legal
22 memorandum in support of his or her respective position, and allowed the questioning to
23 proceed as to Exhibit 2 in its redacted form.

24 Dubois testified that Border Patrol's certification process is "generally accepted in the law
25 enforcement community." With regard to the certification letter (dated June 9, 2009) Dubois
26 testified the canine and handler are evaluated separately and certification is valid for one year.
27 The dog and handler are evaluated separately; the Search and Indication Scores relate to the
28 canine, while the Handler Score relates to the handler. Dubois also testified the performances

- 4 -

1 of the dog and handler are rated on a score of 1 through 6 with "1 being the best and 6 being
2 the worse." A passing score is considered 3.49, and anything over that score, e.g. 3.51, is not
3 passing. Among the items LeBlanc and Beny-A are certified to detect is marijuana and its
4 derivatives.

5     Dubois testified that within Border Patrol an "alert" by a canine refers to "a change of body
6 posture and increased respiration, when the K9 first detects odors he's been trained to detect."
7 An "[i]ndication is defined as a trained behavior that pinpoints a source." Dubois further
8 stated that both an "alert" and an "indication" are "tools used by the handler" and they do not
9 always correspond together. "In fact, a handler should be trained to recognize the alert.
10 That's the most important part, not necessarily the indication. You want that handler to be
11 able to read the alert of his K9." The scores on the certification letter dated June 9, 2009,
12 indicate Leblanc and Beny-A achieved passing scores in the required areas.

13     Dubois testified that the remaining documents in Exhibit 2 are "performance standard
14 score sheets, maintenance sheets." ( These sheets are green in the original and therefore are
15 often referred to as a "green sheet.") These sheets are generated whenever a scheduled
16 maintenance training is conducted, and a dog and handler are minimally required to complete
17 16 hours of maintenance training monthly. "It's broken down into 8 hours per pay period or
18 every two weeks. And so you would anticipate seeing two [green sheets] per month." The
19 maintenance training is conducted and evaluated by a training instructor.

20     Dubois testified he had reviewed the contents of Exhibit 2 and, based on his training and
21 experience, believes the team of LeBlanc and Beny-A are "a reliable K9 team." They have
22 passed all their maintenance trainings and certifications. He stated he believes the team has
23 had to do additional training for a third party aggression, but that would not affect the scores
24 for the detection of odors.

25     On cross-examination Dubois testified that while dog detections at checkpoints "are
26 certainly a difficult environment for dogs to work in because of the distractions" there are also
27 a number of other environments that could be difficult and "each one is unique." He also
28 stated that it did not appear that any of the certification testing for LeBlanc and Beny-A had

- 5 -

1 been done at a checkpoint. Dubois also testified that Border Patrol makes a distinction
2 between an "indication" and an "alert." "Indication" behavior is broader than "alert"
3 behavior; it represents a broader period of time and "incorporates the alert itself." With this
4 canine team the dog is trained to sit as an indication. Dubois also stated that no records are
5 maintained if a dog alerts or indicates and no contraband is subsequently found.
6 Dubois testified that a dog may engage in alert behavior (e.g., heavy breathing, uplifted tail,
7 change in body posture) but never sit, but "[I]t's the alert that's critical."

### *Testimony of Jonathan Michael Thomas (Defendant)*

9    He testified that after he was referred to the secondary lane at the checkpoint he was asked
10 to get out of the truck. He and his children got out and he left the keys in the ignition. After
11 LeBlanc ran the dog, he tried to open the toolbox in the bed of the truck and found it was
12 locked. LeBlanc then asked for the keys and asked the defendant if he minded if he looked
13 in the toolbox. The defendant said no and stated the keys were in the ignition. The defendant
14 stated that when he answered "no" he meant to convey that he did not want LeBlanc to look
15 in the toolbox.

16    On cross-examination the defendant stated he was driving the truck when he entered the
17 checkpoint and that he was the registered owner of the vehicle. He was not handcuffed when
18 LeBlanc asked him about the keys. He admitted that when LeBlanc put the key in the toolbox
19 lock he did not tell him to stop. The defendant stated that when LeBlanc went to get the keys
20 from the ignition, another agent stepped in front of the defendant before he had a chance to
21 say anything further. The defendant admitted that he never said stop or tried to clarify his
22 "no" response.

23
24

25 **DISCUSSION:**
26 *Admissibility of redacted canine certification records*

27    Defense counsel objected to the admission of redacted canine certification records on the
28 grounds that the redacted records are insufficient to establish the reliability of the canine team

- 6 -

1 that conducted the search in this case.  Counsel cites *United States v. Cedano-Arrellano,* 332
2 F.3d 568, (9th Cir. 2003), in support of his position.  However, in *Cedano-Arrellano* the trial
3 court had denied the defense motion for *any* discovery of the canine certification records.  The
4 government correctly argues there is precedent in this district for denying a defense request
5 to view unredacted canine certification records and precedent for a court's reliance on
6 redacted canine certification records.

7 This court recommends that the District Court rule that the redacted canine certification
8 reports (Exhibit 2) are admissible and deny the defense motion to discover those unredacted
9 reports.   The redacted reports establish the reliability of the canine team.

10 *Duration and scope of detention at checkpoint*

11 The testimony indicates that when the defendant drove into the checkpoint, LeBlanc and
12 his dog were present.  In fact, it was the dog's "alert" behaviors that prompted LeBlanc to
13 refer the defendant to secondary for further investigation. Testimony indicates that at
14 secondary, LeBlanc ran his dog around the truck as soon as the occupants were safely away
15 from the vehicle.  Le Blanc testified that less that four minutes elapsed between the time the
16 defendant drove into pre-primary and when the marijuana was found.  This testimony is
17 uncontroverted. Furthermore, in view of the fact that the dog alerted to the truck at primary
18 and LeBlanc directed the dog's attention to the truck at secondary, this court concludes that
19 neither the duration nor the scope of the detention was unreasonable.

20 *Probable cause for search*

21 Defendant concedes that the Ninth Circuit has held that an alert by a canine team is
22 sufficient to provide probable cause for a search so long as the dog's reliability is established.
23 *United States v. Lugwig,* 997 F.2d 632, 634 (9th Cir. 1993), but, in this case, argues the
24 reliability of the team has not be established.  Defendant seems to argue that because the BPA
25 differentiates between "alert" and "indication" behaviors the canine in this case is unreliable.
26 As best as this court can determine the defendant is arguing that because the dog exhibited
27 only "alert" behaviors at pre-primary and did not "indicate" by sitting, then there was no
28 justification to refer him to secondary for further investigation.  This court does not agree.

1  The dog's exposure to the truck at pre-primary was for a limited amount of time–apparently
2  for only about 10 seconds; but it is undisputed that he exhibited "alert" behaviors. Given the
3  dog's behavior it was reasonable for the referral to secondary in order to give the dog more
4  time and exposure to the truck. LeBlanc testified that after taking the dog on a "systematic
5  search" around the truck, and when presented to the toolbox the dog "immediately went into
6  what we call a–an indication or sit–a passive indication." That demonstrated the dog had
7  located the source of an odor which he was trained to detect. This court concludes the referral
8  to secondary was reasonable and the dog's sitting behavior established probable cause to
9  believe the toolbox contained contraband and justified a search of the toolbox.

10 *Consent to the search.*

11  Having determined there was probable cause for the search, this court does not have to
12 reach the issue of whether the defendant consented to the search.

15 **RECOMMENDATION:**

16  In view of the foregoing, the magistrate recommends that the District Court, after its de
17 novo review, **DENY** the defendant's Motion to Suppress. Any party may file objections
18 within 14 days after being served with a copy of this Report and Recommendation. If
19 objections are not timely filed, the party's right to de novo review may be waived. If
20 objections are filed, the parties should direct them to the District Court by **omitting the**
21 **magistrate's initials from the caption.**

22  This Report and Recommendation is being faxed to all counsel on today's date. The Clerk
23 of the Court is directed to send a copy of this Report and Recommendation to all counsel.
24  DATED this 18th day of February, 2011.

_____
Glenda E. Edmonds
United States Magistrate Judge